# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Berger, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Nationstar Mortgage LLC, and Bank of America, N.A.,<br><br>Defendant. | Case No. 14-cv-4110 (SRN/TNL)<br><br>**MEMORANDUM OPINION AND ORDER** |

Carl E. Christensen and Daniel M. Eaton, Christensen Law Office, PLLC, 800 Washington Ave N., Suite 704, Minneapolis, MN 55401; Daniel C. Bryden and Kai H. Richter, Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402-2242, for Plaintiff.

Ashley M. DeMinck and Ellen B. Silverman, Hinshaw & Culbertson LLP, 333 South 7th Street, Suite 2000, Minneapolis, MN 55402; Brett J. Natarelli and Richard E. Gottlieb, BuckleySandler LLP, 353 N. Clark Street, Suite 3600, Chicago, IL 60654, for Defendant Nationstar Mortgage LLC.

James W. McGarry, Goodwin Procter LLP, 53 State Street, Boston, MA 02109-2802; Keith E. Levenberg, Goodwin Procter LLP, 901 New York Avenue, N.W., Washington, DC 20001-4432; Mark G. Schroeder, Briggs & Morgan, PA, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402, for Defendant Bank of America N.A.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on Defendant Bank of America's Motion to Dismiss First Amended Complaint [Doc. No. 32].  For the reasons set forth below, the Court grants Bank of America's motion.

## II. BACKGROUND

### A. Plaintiff's Mortgage Loan and Loan Modification

Plaintiff Daniel Berger ("Plaintiff or "Berger") brings this action, on behalf of himself and other similarly-situated homeowners who were allegedly wrongfully treated as being in default on their mortgage, against Defendants Nationstar Mortgage LLC ("Nationstar") and Bank of America, N.A. ("Bank of America"). The lawsuit arises out of Defendants' alleged failure to properly transfer and enforce Plaintiff's modified mortgage loan.

Berger purchased a home in Spring Lake Park, Minnesota on May 22, 2000. (First Am. Compl. ¶ 8 [Doc. No. 22].) On June 29, 2006, Plaintiff obtained a mortgage loan ("Mortgage") from Mortgage Electronic Registration Systems, Inc., and the Mortgage was recorded on July 10, 2006. (See id. ¶ 9.) The Mortgage was later assigned to BAC Home Loans Servicing, LP on July 1, 2011, and the assignment ("Assignment" or "Assignment of Mortgage") was recorded on July 12, 2011. (See id. ¶ 10.) BAC Home Loans Servicing later merged with Bank of America, and, as a result of this merger, Bank of America became the successor to Plaintiff's Mortgage loan. (Id. ¶ 11.)

Berger applied to modify the terms of his loan through the Home Affordable Modification Program ("HAMP"). (Id. ¶ 13.) His application was granted and Bank of America executed the loan modification ("Loan Modification") on June 24, 2013. (Id. ¶ 14.) The Loan Modification added all of the amounts past due to the principal balance of Plaintiff's promissory note, and Berger's modified payments were set to begin on June 1, 2013 in the amount of $1,317.54 per month. (Id.; Ex. 3, "Loan Modification" at 2 [Doc.

No. 22-1].)[1]

On July 18, 2013, Bank of America assigned Plaintiff's loan to Nationstar. (Id. ¶ 16.) The Assignment included the servicing of Plaintiff's Mortgage. (Id. ¶ 17.) Although the Assignment took place in July 2013, it was not recorded until November 15, 2013. (Id. ¶ 16.) Nationstar admits that it "was not aware of the Bank of America [Loan] Modification" when it sent Berger a "welcome" letter on July 25, 2013, informing Plaintiff that he was $78,859.60 in arrears on the loan he had recently modified. (Nationstar's Answer ¶ 17 [Doc. No. 30]; First Am. Compl. ¶ 17 [Doc. No. 22]; id., Ex. 5, "Nationstar Letter" [Doc. No. 22-1].)

Plaintiff alleges that despite his Loan Modification, Nationstar proceeded to foreclose on his home and sold the home by sheriff's sale to Bank of America on October 4, 2013. (See First Am. Compl. ¶ 18 [Doc. No. 22].) Although Nationstar admits that it sold Plaintiff's home in a non-judicial foreclosure on October 4, 2013, Nationstar denies that it was unwilling to enforce the Loan Modification. (See Nationstar Answer ¶ 18 [Doc. No. 30].) Rather, Nationstar contends that it informed Berger "during a telephone conversation on July 29, 2013, that it *would* honor the Bank of America Modification, and *would* accept payments in the Bank of America Modification amount." (See id. ¶ 42) (emphasis original).[2] Nationstar further claims that although Daniel Berger and Jamie

---

[1] The Court notes that in Berger's Complaint he alleges that pursuant to the Loan Modification, he owed "$1,317.57" a month. (Id. ¶ 15 [Doc. No. 22].) The Court assumes that this was a slight typographical error given the three cent inconsistency with the monthly payment detailed in the Loan Modification document itself.

[2] Nationstar appears to commit the same typographical error as Berger when reciting the monthly payment due pursuant to the Loan Modification. Like Berger,

3

Berger both wrote checks to Nationstar on July 29, 2013, when Nationstar attempted to deposit the checks, the Bergers' banks "refused to honor the checks due to insufficient funds in the respective accounts." (Id.)  Nationstar contends that it was similarly unable to deposit another check written by Plaintiff on September 26, 2013, in the amount of $734.00, because Berger had insufficient funds in his account.  (Id.)

Plaintiff contends that in February 2014, he demanded that both Defendants rescind the October 4, 2013 sheriff's sale.  (First Am. Compl. ¶ 19 [Doc. No. 22].)  Berger explains that the sale was eventually rescinded because of Defendants' failure to record the Assignment of Plaintiff's Mortgage to Nationstar prior to the sale.  (Id. ¶ 20; Nationstar Answer, Ex. A, "Stipulation and Order Rescinding Sale" [Doc. No. 30-1].)  As the Court noted above, Defendants did not record the Assignment until November 15, 2013.  (First Am. Compl. ¶ 16 [Doc. No. 22].)

Berger argues that he suffered damages as a result of Nationstar's unlawful foreclosure on this home.  (Id. ¶ 24.)  The damages allegedly include unnecessary expenses in defending the wrongful foreclosure, unnecessary damage to Berger's credit rating, and unwarranted fees charged against his mortgage loan account.  (Id.)

### B. Plaintiff's Claims

Plaintiff asserts four common law and statutory claims against Nationstar, on behalf of himself and three classes of Plaintiffs.  (Id. ¶¶ 26, 35–58.)  In addition, in Count V, Berger asserts a negligence claim against Bank of America, on behalf of himself and a

---

Nationstar states that Plaintiff's modified monthly payment was $1,317.57 (see id.), instead of $1,317.54, the amount that was recorded in the Loan Modification document.

class of:

> mortgagors who obtained a permanent loan modification from Bank of America prior to the time that the servicing and/or payment rights to their loan were transferred to Nationstar, and were not in default on their modified loan, but who Nationstar treated as being in default at any time on or after December 18, 2008.

(See id. ¶¶ 27, 59–63.) Specifically, Plaintiff contends that Bank of America owed him a duty of reasonable care when transferring his Mortgage, and other similar mortgages, to Nationstar, and it breached that duty by failing to adequately inform Nationstar about his and others' permanent loan modifications. (Id. ¶¶ 61–62.)

### C. Procedural Posture

On January 23, 2015, Bank of America filed a motion [Doc. No. 32] and a supporting brief [Doc. No. 34] to dismiss Count V of Plaintiff's First Amended Complaint. On March 20, 2015, Plaintiff filed a response brief [Doc. No. 54], and Bank of America filed a reply on April 3, 2015 [Doc. No. 56]. The Court heard oral argument on Defendant's motion on April 30, 2015.

## III. DISCUSSION

### A. Standard of Review

Defendant moves to dismiss Plaintiff's Count V, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of

5

Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d); Gorog v. Best Buy Co., 760 F.3d 787, 791 (8th Cir. 2014); Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).[3]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

---

[3] In his Complaint, Plaintiff references several specific documents including, but not limited to, the Mortgage, the Loan Modification, the Assignment of Mortgage, and Nationstar's welcome letter. (See generally First Am. Compl. [Doc. No. 22].) Berger also attaches these documents as exhibits to his Complaint. (See id., Exs. 1–9 [Doc. No. 22-1].) The Court refers to these documents as needed throughout the Order.

6

### B. Plaintiff's Count V: Negligence Claim

Under Minnesota law, to state a prima facie case for negligence, Berger must demonstrate that: (1) Bank of America owed Plaintiff a "duty" of care when assigning and transferring Plaintiff's loan; (2) Bank of America "breached [] that duty;" (3) "the breach was the proximate cause of [Berger's] injury;" and (4) "[Berger] did in fact suffer an actual injury." See Kataviravong v. Mirabella Mortgage, LLC, No. 12-cv-493 (ADM/JJG), 2012 WL 2045957, at *4 (D. Minn. June 6, 2012) (citing Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982)); Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) (stating the four elements required to plead a negligence claim: (1) duty of care, (2) breach of duty, (3) causation, and (4) damages); Schweich v. Ziegler, Inc., 463 N.W.2d 722, 729 (Minn. 1990) (same).

Defendant argues that Plaintiff's negligence claim is barred by the independent duty rule. (See Def.'s Mem. at 2 [Doc. No. 34].) "The independent duty rule provides limitations on when a party may assert tort claims against another with whom the party has a contractual relationship." Nelson v. Saxon Mortgage, Inc., No. 12-cv-1312 (JRT/JJG), 2014 WL 186163, at *23 (D. Minn. Jan. 16, 2014) (citing Hanks v. Hubbard Broad., Inc., 493 N.W.2d 302, 308 (Minn. Ct. App. 1992)).[4] Bank of America contends that, aside from its contractual obligations, it does not owe Berger an additional duty of

---

[4] The independent duty rule was established by the Minnesota Supreme Court in Wild v. Rarig, 234 N.W.2d 775, 789–90 (Minn. 1975). In Wild, the plaintiff sought both contract and tort damages for a breach of contract, and the court held that "when a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." See 234 N.W.2d at 789.

care. Below, the Court finds that Defendant did not owe Berger an independent duty of care; and thus, Plaintiff's negligence claim fails.[5]

### 1. Independent Duty Rule

As the Court explained above, in order to survive dismissal, Berger must first demonstrate that Bank of America owed him a duty of care when assigning and transferring his Mortgage to Nationstar. "Existence of a duty in a negligence case is a question of law." Funchess v. Cecil Newman Corp., 632 N.W.2d 666, 672 (Minn. 2001). Pursuant to Minnesota law, the independent duty rule provides that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract constitutes or is accompanied by an independent tort." Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 994 (D. Minn. 2006) (internal quotations omitted); see Walker v. Bank of Am., N.A., No. 11-cv-783 (ADM/JSM), 2013 WL 5771154, at *7 (D. Minn. Oct. 24, 2013).[6]

In other words, under Minnesota law, a plaintiff does not have a cause of action for negligent breach of a contractual duty, and a contract claim should not be converted

---

[5] Defendant additionally argues that even if such an independent duty existed, Plaintiff fails to allege facts demonstrating that Bank of America plausibly breached that duty. (See Def.'s Mem. at 2 [Doc. No. 34].) Because the Court finds that Bank of America did not owe Plaintiff a duty of reasonable care, the Court need not address Bank of America's plausibility argument.

[6] Plaintiff contends that the Court should apply a five-factor test, as other Minnesota state courts do, to determine if Bank of America owes a duty of care to Plaintiff. (See Pl.'s Mem. at 6 (citing Domagala, 805 N.W.2d at 26 [Doc. No. 54].) However, Plaintiff fails to recognize that the independent duty rule is an exception to the general common law test that courts apply. The exception applies in circumstances where, as here, the parties are already in a contractual relationship with one another. Cf. Domagala, 805 N.W.2d at 18–20 (defendant and plaintiff had not previously entered into a contractual relationship).

8

into a tort claim. See Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn. 1983) (holding that because the parties' duties arose out of contracts, it was error to submit the theory of "negligent breach" of contract to the jury). Thus, "if a party's negligence claim is based on a breach of duty that 'is indistinguishable from the breach of contract,' the claim will fail, but if 'a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself,' the negligence claim may be viable." Nelson, 2014 WL 186163, at *23 (quoting Hanks, 493 N.W.2d at 308); see also Russo, 462 F. Supp. 2d at 994.

"The test is whether a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." Hanks, 493 N.W.2d at 308 (citing Brewster v. Martin Marietta Aluminum Sales, Inc., 378 N.W.2d 558, 569 (Mich. Ct. App. 1985)). Generally, "lenders bear no fiduciary duty to borrowers." Ming'ate v. Bank of Am., N.A., No. 11-cv-1787 (ADM/TNL), 2011 WL 4590431, at *5 (D. Minn. Sept. 30, 2011).[7] Accordingly, in order to survive dismissal, Berger must demonstrate that Bank of America had a non-fiduciary duty to transfer his Loan Modification with reasonable care, separate from the duties that arise from the Mortgage or Loan Modification contracts. See Nelson, 2014 WL 186163, at *23; Jones v. W. Union Fin. Servs., Inc., 513 F. Supp. 2d 1098, 1100–01 (D. Minn. 2007); see also Walker, 2013 WL

---

[7] Minnesota courts have recognized that if a bank enters into a "special relationship" with its customer, beyond the typical lender-borrower relationship, then that relationship may give rise to a bank's additional fiduciary duties. See Roers v. Countrywide Home Loans, Inc., 728 F.3d 832, 838 (8th Cir. 2013). Here, however, the Court need not consider any duties that may arise from a fiduciary relationship between Bank of America and Plaintiff because Berger does not allege a fiduciary relationship existed between the parties. (See Pl.'s Mem. at 12 [Doc. No. 54].)

9

5771154, at *7 (explaining that the independent duty rule can be overcome by showing a fiduciary or other independent duty).

### 2. Bank of America Did Not Have an Independent Duty

Here, a relationship between Bank of America and Berger, which would give rise to Bank of America's duty to transfer Berger's loan with reasonable care, would *not* exist without the Mortgage, the Loan Modification, and/or the Assignment contracts themselves.  See Hanks, 493 N.W.2d at 308.  If the parties had not entered into the original loan agreement and the subsequent Loan Modification agreement, then no mortgage would exist for Bank of America to assign to Nationstar.  Thus, by necessity, Bank of America could not have transferred, negligently or otherwise, a non-existent loan modification to Nationstar.  In other words, without the underlying Mortgage, the Loan Modification, and the Assignment contracts, Bank of America would not have a duty to transfer the loan with reasonable care.  See id.; see Roers v. Countrywide Home Loans, Inc., 728 F.3d 832, 838 (8th Cir. 2013) (holding that because the defendant-bank was in a "typical borrower-lender relationship" with the plaintiff-mortgagee, the bank did not owe the plaintiff a duty of care under Minnesota law, aside from its contractual obligations). Therefore, pursuant to Minnesota's independent duty rule, Bank of America did not have an independent duty of reasonable care when transferring Berger's Loan Modification. Accordingly, Plaintiff fails to allege a negligence claim that is plausible on its face.  See Twombly, 550 U.S. at 570.

### 3. Plaintiff's Negligence Claims Falls within the Scope of His Contractual Relationship with Bank of America

Plaintiff argues that the independent duty rule does not foreclose his negligence claim since his claim does not "'fall within the scope' of the contract between [Bank of America] and Plaintiff because it is not based on a breach of the modification agreement." (See Pl.'s Mem. at 11 (internal citations omitted) [Doc. No. 54].) The Court disagrees.

Although Plaintiff correctly notes that the Loan Modification contract does not contain a section "that governs what duties [Bank of America] had when it transferred Plaintiff's mortgage to Nationstar," (Pl.'s Mem. at 11 [Doc. No. 54]), two other contract provisions, read together, demonstrate that Bank of America was contractually obligated to inform Nationstar about the Loan Modification. The first relevant provision is in the Loan Modification itself. The Loan Modification's "New Mortgage Payment" section expressly states that Berger's "new modified monthly mortgage payment is $1,317.54" (First Am. Compl., Ex. 3, "Loan Modification" at 2 [Doc. No. 22-1]). The second relevant contractual provision is located in the Assignment of Mortgage. In the Assignment, Bank of America agreed to transfer "all beneficial interest under [Berger's Mortgage] . . . together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under [Plaintiff's] Mortgage." (First Am. Compl., Ex. 4, "Assignment of Mortgage" [Doc. No. 22-1].) Therefore, by signing this contract, Bank of America agreed to provide Nationstar with accurate information that summarized the parties' contractual obligations

at the time the Assignment was made. Because the Loan Modification altered the rights of the parties and changed Berger's payment obligations, Bank of America was contractually obligated to inform Nationstar about the Loan Modification.

Although Plaintiff "does not cite to any *contractually* imposed duties" (Pl.'s Mem. at 11 (emphasis original) [Doc. No. 54]) in Count V of his Complaint, Berger's failure to properly allege a contract claim does not validate his improperly pled tort claim against Bank of America. In sum, insofar as Plaintiff argues that his "negligence" claim does not fall within the scope of the contract he had with Bank of America, the Court finds that this argument fails.

### 4. Irrelevancy of Status of Current Contractual Relationship Between Plaintiff and Bank of America

Plaintiff also contends that the independent duty rule does not apply in this case because although "Plaintiff *had* a contractual relationship with [Bank of America], . . . that relationship ended when [Bank of America] transferred his mortgage to Nationstar." (See Pl.'s Mem. at 11 (emphasis original) [Doc. No. 54].) The Court disagrees.

First, in his Complaint, Berger alleges that Bank of America owed him "a duty of care *when* transferring his mortgage to Nationstar." (See First Am. Compl. ¶ 60 (emphasis added) [Doc. No. 22].) Therefore, Plaintiff alleges that Bank of America breached its duty *while* transferring his Mortgage, not *after* the servicing transfer was complete. As Defendant explains, pursuant to Plaintiff's own Complaint, Bank of America allegedly breached its duty "*before* the servicing transfer was complete, and before any contractual privity between Plaintiff and Bank of America 'ended.'" (See

Def.'s Reply at 4–5 (emphasis original) [Doc. No. 56].)

Second, simply because the contractual relationship between Bank of America and Plaintiff has now ended does not mean that Plaintiff is foreclosed from bringing a contractual claim against Bank of America for its alleged failure to properly transfer the Loan Modification when the contract was still valid. As Defendant correctly explains, "[i]f the law were otherwise, no claim sounding in contract could ever be brought after the term of a contract expires, even if there were a breach within it." (See Def.'s Reply at 5 [Doc. No. 56].) Accordingly, although the relevant contracts no longer govern the parties' actions, Plaintiff is not limited in bringing claims that stem from events that occurred while the contracts still governed.

### 5. Distinguishable Cases

Plaintiff cites a slew of cases that he believes demonstrate Minnesota's "long tradition of holding banks to the same negligence standard as other actors when there is a foreseeability of harm." (See Pl.'s Mem. at 7 [Doc. No. 54].) However, all of these cases are distinguishable. For instance, most of the cases do not involve preexisting contractual relationships between the plaintiffs and the defendant-banks. See City of St. Paul v. Merchants' Nat. Bank, 187 N.W. 516, 517 (Minn. 1922) (affirming the lower court's finding that the defendant-bank was negligent for issuing vouchers against the plaintiff's deposit account when the payees' names were forged; however, the city and the bank were not otherwise in a creditor-debtor relationship); Trustees of German Evangelical Lutheran St. John's Congregation v. Merchants' Nat. Bank, 165 N.W. 491, 493 (Minn. 1917) (affirming the lower court's finding that the defendant-bank negligently paid

13

certificates of deposit to the plaintiff-church's embezzling treasurer; however, the church and the bank were not otherwise in a creditor-debtor contractual relationship); Claflin v. Commercial State Bank of Two Harbors, 487 N.W.2d 242, 245–47 (Minn. Ct. App. 1992), review denied (Minn. Aug. 4, 1992) (reversing the trial court's dismissal of the plaintiff's negligence claim against the defendant-bank because the bank failed to inquire about the plaintiff's rights in the property even though she continued to possess the property; and noting that although the plaintiff's son entered into a contractual relationship with the bank by obtaining a loan, the plaintiff never entered into a contractual relationship with the bank); Gerdin v. Princeton State Bank, 371 N.W.2d 5, 6–7 (Minn. Ct. App. 1985) (holding that the bank had a duty of reasonable care to disclose the existence of tax liens on the property sold at foreclosure sale to the plaintiff under the objective circumstances present, but noting that the plaintiff and the defendant-bank did not have a preexisting contractual relationship). A plaintiff cannot have a contract claim that falls within the scope of his contractual relationship with a bank if the parties are not in fact *in* contractual privity. These cases are in stark contrast to Berger's case because Berger had a preexisting contractual relationship with Bank of America and his claim falls within the scope of the relevant contracts.

In another case cited by Berger, Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26 (Minn. 1982), the plaintiffs and the defendant-bank *had* entered into a contractual relationship before the plaintiffs' negligent infliction of emotional distress claim arose. Nonetheless, Langeland is also distinguishable. In Langeland, the plaintiffs entered into an agreement, "according to which the bank would lend [the plaintiffs]

14

additional money," in order for the plaintiffs to redeem their farm within a one-year redemption period. See 319 N.W.2d at 28. The Minnesota Supreme Court explained that the bank was negligent because the bank's agent had misread a statute, and, as a result, had failed to accomplish a timely redemption of the plaintiffs' property.[8] See id. at 32.

Unlike Berger's case, in Langeland, the plaintiffs likely did not have a viable contract claim. The plaintiffs' agreement merely required the bank to "lend them additional money," but likely did not require the bank to ensure that the redemption was successful. See id. at 28. Thus, the Langeland plaintiffs' tort claim was not barred by the independent duty rule, because the bank's duty did not fall within the scope of its contractual relationship with the plaintiffs. In contrast, here, Berger's negligence claim falls within the scope of his contractual relationship with Bank of America, because the relevant contractual documents obligated Bank of America to inform Nationstar about the Loan Modification.

Plaintiff also seeks to analogize this case to cases brought under California and Hawaii tort law. However, several of these cases are immaterial because they involve borrowers suing banks for unsuccessful *attempts* to obtain loan modifications, rather than actions based on breaches of already existing loan modifications. See Yau v. Deutsche Bank Nat. Trust Co. Americas, 525 Fed. App'x 606, 609 (9th Cir. 2013) (holding that the plaintiffs' negligence claim may not be futile because at least one California appeals court held that a loan servicer owes a duty of care to a borrower when handling a loan

---

[8] However, the Langeland Court ultimately held that the plaintiffs failed to demonstrate an injury sufficient to recover on their negligent infliction of emotional distress claim. See id. at 32.

15

modification *application*); Crilley v. Bank of Am., N.A., No. CIV. 12-00081 LEK, 2012 WL 1492413, at *1–4 (D. Haw. Apr. 26, 2012) (finding that the plaintiffs stated a plausible negligence claim against Bank of America where they alleged that the bank solicited them for a loan modification but made misleading representations about their ability to qualify for the modification); Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *1–2 (N.D. Cal. May 10, 2010) (holding that the defendant-bank owed the plaintiff a duty of reasonable care when it improperly handled the plaintiff's loan modification request). The parties in these cases had not yet entered into contracts that pertained to the banks' handling of loan modification applications; and thus, the plaintiffs could not have alleged that the banks' duties arose from contractual obligations in preexisting contracts. In contrast, as the Court explained in detail above, Berger's claim falls within the scope of his preexisting contractual relationship with Bank of America because Defendant's duty arises from the contracts.

Finally, the remaining California cases that Plaintiff cites are distinguishable because they involve a special relationship between the borrower and the lender, in which the defendant-bank "went beyond its role as a silent lender and loan servicer." See Ansanelli v. JP Morgan Chase Bank, N.A., No. C 10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (explaining that although a financial institution does not owe a duty of care to a borrower when the bank's role is a mere lender of money, here, the defendant exceeded this role by offering an opportunity to plaintiffs for loan modification and engaging with them concerning the trial period plan); Robinson v. Bank of Am., No. 12-CV-00494-RMW, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012)

(denying the defendant's motion to dismiss and holding that the bank owed the plaintiff a duty of care when it allegedly breached a loan modification agreement because the bank went "beyond its role as a 'silent' lender in its dealings with [the] plaintiff").  In this case, however, Berger does not allege that he had a "special relationship" with Bank of America that went beyond the typical lender-borrower relationship.  (See Pl.'s Mem. at 12 [Doc. No. 54].)  In sum, the Court finds that the cases Plaintiff relies upon to support his negligence claim are distinguishable.  Accordingly, Plaintiff's Count V is dismissed.

## IV.    ORDER

Based on all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant Bank of America's Motion to Dismiss First Amended Complaint [Doc. No. 32] is **GRANTED**, as detailed herein.  The Court notes that Plaintiff may file a motion requesting leave to amend his Complaint to allege a contract claim, in lieu of a tort claim, against Defendant Bank of America, and requesting the Court to find that his amendment relates back to the date of his original Complaint.


Dated:  July 15, 2015                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge